SHORT RECORD
25-8031
Filed 11/07/2025

**No. 25-_____**

# United States Court of Appeals
# for the Seventh Circuit

_____

ERNEST PAYTON, ET AL.,

*Plaintiffs-Respondents,*

v.

UNION PACIFIC RAILROAD COMPANY,

*Defendant-Petitioner.*

_____

On Petition for Permission to Appeal from the
United States District Court for the Northern District of Illinois
No. 1:24-cv-00153 (Hon. Jorge L. Alonso)

_____

**PETITION FOR PERMISSION TO APPEAL
PURSUANT TO 28 U.S.C. § 1292(b)**

_____

Gary Feinerman
Sean M. Berkowitz
Johanna Spellman
Kathryn A. Running
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700


Ben Harris
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Counsel for Defendant-Petitioner Union Pacific Railroad Company*

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: _____

Short Caption: _Payton v. Union Pacific Railroad Company_

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Union Pacific Railroad Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Latham & Watkins LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

            Union Pacific Corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

            Union Pacific Corporation

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: _/s/ Gary Feinerman_        Date: _11/07/2025_

Attorney's Printed Name: Gary Feinerman

Please indicate if you are _Counsel of Record_ for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☒    **No** ☐

Address: Latham & Watkins LLP

       330 North Wabash Avenue, Suite 2800, Chicago, IL 60611

Phone Number: (312) 876-7700        Fax Number: (312) 993-9767

E-Mail Address: gary.feinerman@lw.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: _____

Short Caption: Payton v. Union Pacific Railroad Company _____

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Union Pacific Railroad Company _____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Latham & Watkins LLP _____

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Union Pacific Corporation _____

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Union Pacific Corporation _____

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A _____

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A _____

---

Attorney's Signature: /s/ Sean M. Berkowitz _____ Date: 11/07/2025 _____

Attorney's Printed Name: Sean M. Berkowitz _____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☒

Address: Latham & Watkins LLP _____

    330 North Wabash Avenue, Suite 2800, Chicago, IL 60611 _____

Phone Number: (312) 876-7700 _____ Fax Number: (312) 993-9767 _____

E-Mail Address: sean.berkowitz@lw.com _____

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: _____

Short Caption: Payton v. Union Pacific Railroad Company

     To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

     The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

     ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

     Union Pacific Railroad Company

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

     Latham & Watkins LLP

(3)     If the party, amicus or intervenor is a corporation:

     i)     Identify all its parent corporations, if any; and

          Union Pacific Corporation

     ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          Union Pacific Corporation

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

     N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

     N/A

---

Attorney's Signature: /s/ Johanna Spellman     Date: 11/07/2025

Attorney's Printed Name: Johanna Spellman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☐     **No** ☒

Address: Latham & Watkins LLP

     330 North Wabash Avenue, Suite 2800, Chicago, IL 60611

Phone Number: (312) 876-7700     Fax Number: (312) 993-9767

E-Mail Address: johanna.spellman@lw.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: _____

Short Caption:  Payton v. Union Pacific Railroad Company _____

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first.  Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Union Pacific Railroad Company _____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Latham & Watkins LLP _____

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Union Pacific Corporation _____

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Union Pacific Corporation _____

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A _____

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A _____

Attorney's Signature: /s/ Kathryn A. Running _____    Date: 11/07/2025 _____

Attorney's Printed Name: Kathryn A. Running _____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐  **No** ☒

Address: Latham & Watkins LLP _____

    330 North Wabash Avenue, Suite 2800, Chicago, IL 60611 _____

Phone Number: (312) 876-7700 _____    Fax Number: (312) 993-9767 _____

E-Mail Address: kathryn.running@lw.com _____

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: _____

Short Caption: Payton v. Union Pacific Railroad Company

     To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

     The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

       ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

     Union Pacific Railroad Company

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

     Latham & Watkins LLP

(3)     If the party, amicus or intervenor is a corporation:

     i)     Identify all its parent corporations, if any; and

          Union Pacific Corporation

     ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          Union Pacific Corporation

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

     N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

     N/A

---

Attorney's Signature: /s/ Benjamin Harris     Date: 11/07/2025

Attorney's Printed Name: Benjamin Harris

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☒

Address: Latham & Watkins LLP

     1271 Avenue of the Americas, New York, NY 10020

Phone Number: (212) 906-1200     Fax Number: (212) 751-4864

E-Mail Address: ben.harris@lw.com

# TABLE OF CONTENTS

Page

APPEARANCES & CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ................ i

TABLE OF AUTHORITIES .................................................................. vii

INTRODUCTION ............................................................................. 1

QUESTION PRESENTED ................................................................... 3

RELIEF SOUGHT ........................................................................... 3

BACKGROUND .............................................................................. 3

    A.    Statutory Background ........................................................... 3

    B.    Factual Background ............................................................. 4

    C.    Proceedings Below ............................................................... 6

REASONS FOR GRANTING THE PETITION ......................................... 7

    A.    Whether Section 25(e) Imposes A Purely Temporal Test Is A Controlling Question of Law. .................................................. 8

    B.    The Question Presented Is Contestable. ................................. 9

    C.    An Immediate Appeal Will Materially Advance The Termination Of This Litigation. ................................................................. 13

CONCLUSION ............................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ahrenholz v. Board of Trustees of the University of Illinois,*
219 F.3d 674 (7th Cir. 2000) ........................................ 7, 8, 9

*Boim v. Quranic Literacy Institute,*
291 F.3d 1000 (7th Cir. 2002) ................................. 9

*Boone v. Illinois Department of Corrections,*
71 F.4th 622 (7th Cir. 2023)................................. 8, 9

*Cothron v. White Castle System, Inc.,*
20 F.4th 1156 (7th Cir. 2021)................................. 1

*Cothron v. White Castle System, Inc.,*
216 N.E.3d 918 (Ill. 2023) ........................... 1, 3, 13

*Enriquez v. Navy Pier, Inc.,*
2022 IL App (1st) 211414-U .............................. 10

*Feliciano v. Department of Transportation,*
605 U.S. 38 (2025) .................................. 11, 12

*Khan v. Deutsche Bank AG,*
978 N.E.2d 1020 (Ill. 2012) ............................. 10

*Petersen v. Wallach,*
764 N.E.2d 19 (Ill. 2002) ............................. 13

*Polselli v. IRS,*
598 U.S. 432 (2023) .................................. 12

*Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates,*
*Inc.,*
86 F.3d 656 (7th Cir. 1996) ............................. 8

*Sterk v. Redbox Automated Retail, LLC,*
672 F.3d 535 (7th Cir. 2012) ............................. 13

*In re Text Messaging Antitrust Litigation,*
630 F.3d 622 (7th Cir. 2010) ............................. 8

**Page(s)**

## STATUTES

28 U.S.C. § 1292(b) ........................................................... 1, 7, 9

740 ILCS 14/1 *et seq.* ............................................................... 1

740 ILCS 14/15(b) ..................................................................... 4

740 ILCS 14/15(d) ..................................................................... 4

740 ILCS 14/20(a) ..................................................................... 4

740 ILCS 14/25 ........................................................................ 4

740 ILCS 14/25(e) .................................................... 1, 2, 4, 8, 10

## OTHER AUTHORITIES

*Merriam-Webster.com* (last visited Nov. 5, 2025) ..................... 10

**INTRODUCTION**

This Court should grant interlocutory review under 28 U.S.C. § 1292(b) to determine the proper legal test for assessing whether a defendant qualifies under the government contractor exemption to the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA" or the "Act"). *See* 740 ILCS 14/25(e).

Over the past decade, BIPA cases have proliferated in federal courts, particularly in Illinois. It therefore is no surprise that three times in the past four years, this Court has granted petitions for interlocutory review in BIPA cases. In *Cothron v. White Castle System, Inc.*, 20 F.4th 1156, 1159 (7th Cir. 2021), this Court granted a Section 1292(b) petition to address whether a claim accrues under BIPA for each scan and each disclosure of a person's biometric identifier. In *Clay v. Union Pacific Railroad Co.*, No. 25-2185 (7th Cir. docketed July 14, 2025), this Court granted a Section 1292(b) petition to address whether the 2024 amendment to BIPA curtailing the catastrophic statutory damages made available by *Cothron v. White Castle System, Inc.*, 216 N.E.3d 918 (Ill. 2023), applies retroactively under Illinois retroactivity principles. And in *Svoboda v. Amazon.com Inc.*, No. 25-1361 (7th Cir. docketed Mar. 4, 2025), this Court granted a Rule 23(f) petition to address the appropriateness of class certification in a BIPA case, including whether the discretionary nature of statutory damages awards defeats Rule 23(b)(3) predominance and whether the substantial damages available to individual class members—an average of more than $60,000 per class member in *Svoboda*, No. 25-1361 (7th Cir.), ECF No. 14 at 19-20, and nearly $1 million per putative class member

in *Fleury v. Union Pacific R.R. Co.*, No. 20-cv-390 (N.D. Ill.), ECF No. 329-7 at 53-59—defeat Rule 23(b)(3) superiority.

This petition is a logical follow-on to *Cothron*, *Clay*, and *Svoboda*. Section 25(e) of BIPA provides that: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e). Union Pacific asks this Court to decide a purely legal question: Whether Section 25(e) requires only a temporal nexus—meaning that government contractors are exempt from BIPA *during the time* they maintain active government contracts—or whether it requires some further substantive nexus between a contractor's alleged collection of biometric information and its government contracts.

Union Pacific moved for summary judgment, arguing that because it indisputably served as a state and local government contractor at all relevant times, it was exempt from BIPA liability under Section 25(e). Dkt. 65. As Union Pacific argued, Section 25(e) imposes a straightforward test that looks only to whether a defendant served as a government contractor during the time it allegedly collected biometric information. *Id.* at 9-12. The district court disagreed, holding that Section 25(e) demands a substantive "nexus between the BIPA violation and the scope of the defendant's work with the government." Dkt. 90 at 5. Weeks later, the district court certified its order for interlocutory review under 28 U.S.C. § 1292(b), explaining that no controlling authority resolved the Section 25(e) issue, the Illinois state courts are

divided, and "both parties offer reasonable interpretations of the statutory language at issue." Dkt. 98 at 3.

This Court should grant Union Pacific's petition for interlocutory review. The question presented—whether Section 25(e) imposes a purely temporal test, or whether it also imposes a substantive test—is a controlling question of law that, if answered in the affirmative, would end this case. The question is also contestable: As the district court recognized, the Illinois courts are divided, and reasonable minds can differ about Section 25(e)'s proper interpretation. Finally, definitely resolving this question now would advance the litigation.

## QUESTION PRESENTED

Whether Section 25(e) requires only a temporal nexus—meaning that government contractors are exempt from BIPA during the time they maintain active government contracts—or whether it also requires a substantive nexus between a contractor's alleged collection of biometric information and its government contracts.

## RELIEF SOUGHT

Union Pacific requests that this Court grant permission to appeal the district court's order denying Union Pacific's motion for summary judgment (Dkt. 90) (Ex. A hereto), as certified by the district court on October 28, 2025 (Dkt. 98) (Ex. B hereto).

## BACKGROUND

### A.    Statutory Background

BIPA subjects defendants to "astronomical damages awards" for the collection or dissemination of biometric identifiers. *Cothron*, 216 N.E.3d at 939 (Overstreet, J., dissenting).  BIPA provides that "[n]o private entity may collect, capture, purchase,

receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" without informed written consent. 740 ILCS 14/15(b). A similar provision renders it unlawful for private entities to disclose or disseminate biometric information. *See id.* 14/15(d). BIPA authorizes the imposition of substantial damages awards: Under BIPA's "right of action," "[a]ny person aggrieved by a violation of this Act shall have a right of action" and "may recover for each violation" either actual damages or statutory damages consisting of $5,000 for willful violations or $1,000 for negligent violations. *Id.* 14/20(a).[1]

Section 25 sets forth BIPA's rules of "[c]onstruction." *Id.* 14/25. Section 25(e) exempts government contractors, providing that "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." *Id.* 14/25(e). The Act does not expressly articulate a test for determining under what circumstances a defendant may qualify for Section 25(e)'s exemption.

## B. Factual Background

Union Pacific is a Class I interstate freight railroad that operates a rail network, including intermodal facilities, across the United States. Plaintiffs are commercial truck drivers who visited Union Pacific's Illinois intermodal facilities to

---

[1] As noted, this Court will decide in (i) *Clay* whether the 2024 BIPA amendment, which limits individual claimants to one recovery for each type of BIPA violation, applies retroactively to cases pending at the time the amendment was enacted, and (ii) in *Svoboda*, whether BIPA class actions are appropriate under Rule 23(b)(3) given, among other things, the discretionary and therefore necessarily individual nature of statutory damages under BIPA, and the substantial statutory damages available to individual claimants.

pick up and drop off shipments. Dkt. 1 ¶ 30. They assert that "[e]ach time [they]" visited such a facility, they were "required to scan their finger at a kiosk" that was "connected" to Union Pacific's "Biometric Tracking System." *Id.* ¶ 31. Plaintiffs allege that by using this system, Union Pacific collected their biometric information and thereby violated BIPA. *Id.* ¶¶ 44-46, 61, 65-66, 71-80. Plaintiffs seek $5,000 for "each intentional and/or reckless violation." *Id.* ¶¶ 66(d)-(e), 80(b)-(c); *id.* at 92 (emphasis omitted).

Union Pacific has long contracted with the State of Illinois, for a wide array of projects including during the entire time period it used finger scan technology at the relevant intermodal facilities. Dkt. 65 at 2-4. For instance, Union Pacific has participated in a public-private partnership called the CREATE program, which is a $4.6 billion program comprising 70 rail improvement projects in the Chicago area that are designed to increase rail capacity, improve connections between rail lines, and benefit the communities through which train lines run. Dkt. 66 ¶ 26. In February 2011, May 2015, September 2022, and August 2024, for instance, Union Pacific entered into separate contracts with the Illinois Department of Transportation ("IDOT") to support various CREATE projects. *Id.* ¶¶ 28-31.

Union Pacific has also entered into various other contracts to improve safety and efficiency of rail lines in Illinois. For instance, it has contracted with the Illinois Commerce Commission, the Union County Highway Department, and the Department of Transportation to install light signals and gates, *id.* ¶ 32, and it has contracted with the IDOT to improve crossing warning signal devices, *id.* ¶ 33.

Beyond these rail improvement projects, Union Pacific long contracted with Metra—a municipal corporation providing commuter services in and out of Chicago—to operate commuter passenger service on three rail lines, including lines that also serve the intermodal facilities. *Id.* ¶¶ 54-55. Union Pacific employees operated and maintained the commuter trains for Metra and also performed administrative functions, such as selling tickets and collecting fares. *Id.* ¶ 55.

### C. Proceedings Below

Plaintiffs filed this lawsuit in January 2024. Dkt. 1. In February 2025, Union Pacific moved for summary judgment, arguing that Union Pacific falls within the Section 25(e) exemption because it has been a state and local government contractor throughout the entire relevant time period. Dkt. 65 at 8. Union Pacific identified the various active government contracts it maintained during the entire time period when it used finger scan technology at its Illinois intermodal facilities. *Id.* at 4-8. Applying the text of Section 25(e), Union Pacific explained that it was a "contractor" within the meaning of the Act, *id.* at 9-10, that its contracts were with state agencies, *id.* at 10, and that its alleged conduct occurred "when [it was] working for" those state agencies, *id.* at 10-11 (alteration in original) (citation omitted).

The district court denied Union Pacific's summary judgment motion on August 25, 2025. The court observed that the "Illinois Supreme Court … has not yet interpreted § 25(e)." Dkt. 90 at 3. The court noted that Illinois lower court decisions have split on the question whether Section 25(e) imposes a purely temporal test. *Id.* at 4-5. Invoking the canon against surplusage, the district court reasoned that "by

including the language 'when working for that State agency or local unit of government'" in Section 25(e), "the Legislature intended to require a nexus between the BIPA violation and the scope of the defendant's work with the government." *Id.* at 5. The district court also asserted "that a categorical exemption would lead to absurd results in which a large company with a single government contract would be categorically exempt from BIPA even when the company's BIPA violations were entirely unrelated to that contract." *Id.* at 6. As a result, the district court concluded that "Union Pacific is not categorically exempt from BIPA under § 25(e)." *Id.*

On September 10, 2025, Union Pacific timely moved to certify the district court's order for interlocutory review under 28 U.S.C. § 1292(b). Dkt. 93. The district court granted the motion on October 28, 2025. Dkt. 98. This petition is filed within ten days of the district court's certification order. *See* 28 U.S.C. § 1292(b).

## REASONS FOR GRANTING THE PETITION

This Court may permit an appeal of an interlocutory order under Section 1292(b) when (1) there is a question of law, (2) the question is controlling, (3) the question is contestable, and (4) the resolution of the question will "*speed up* the litigation." *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). The district court correctly concluded that the question presented here satisfies Section 1292(b)'s criteria. Union Pacific's petition for interlocutory review should be granted.

**A. Whether Section 25(e) Imposes A Purely Temporal Test Is A Controlling Question of Law.**

The first two criteria ask whether there exists a controlling question of law. *See Ahrenholz*, 219 F.3d at 676-77. A "question of law" means "a question of the meaning of a statutory or constitutional provision." *Id.* at 676; *see also In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 624-25 (7th Cir. 2010) (concluding that "abstract legal question[s]" satisfy Section 1292(b)). And a question of law is "controlling" when it is "'quite likely to affect the future course of the litigation.'" *Boone v. Ill. Dep't of Corr.*, 71 F.4th 622, 625 (7th Cir. 2023) (quoting *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996)).

The question presented here is a question of law because it squarely implicates the "meaning of a statutory … provision," Section 25(e) of BIPA. In moving for summary judgment, Union Pacific explained that "throughout the time it used finger scan technology, it was a 'contractor … of a State agency or local unit of government when working for that State agency or local unit of government'" within the meaning of Section 25(e). Dkt. 65 at 9 (alteration in original) (quoting 740 ILCS 14/25(e)). Plaintiffs did not dispute that Union Pacific maintained active government contracts throughout the entire time period covered by their claims. Dkt. 78 at 2. As a result, the principal question facing the district court was a legal one: Whether Section 25(e) is best read to exempt government contractors during the time when they maintained active contracts with state or local agencies, or whether it also demands some substantive connection between the contractor's alleged collection of biometric

information and its government contracts. That pure legal question is one that this Court "could decide quickly and cleanly without having to study the record." *Ahrenholz*, 219 F.3d at 677.

The question is controlling, too. If this Court agrees with Union Pacific that Section 25(e) imposes a purely temporal test, Union Pacific would be exempt from BIPA's substantive provisions and entitled to summary judgment. Resolution of the question, in short, is "quite likely to affect the future course of the litigation," and therefore is controlling under Section 1292(b). *Boone*, 71 F.4th at 625 (citation omitted).

## B.      The Question Presented Is Contestable.

Establishing that a question presents "substantial ground for difference of opinion," 28 U.S.C. § 1292(b), is not a higher bar. This Court has held that the question need only be "contestable," such that there is room for reasonable debate. *Boone*, 71 F.4th at 625. "[Q]uestions of first impression," this Court has said, are "certainly contestable." *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1007-08 (7th Cir. 2002).

There is substantial ground for a difference of opinion on the question whether Section 25(e) imposes a purely temporal test. As the district court acknowledged, there is no controlling precedent from the Supreme Court of Illinois or the Seventh Circuit. Dkt. 98 at 3; *see Boim*, 291 F.3d at 1007-08. The district court correctly noted that Illinois "courts" are "divided" on that question. Dkt. 98 at 3. At least one Illinois trial court has read Section 25(e) to require solely a temporal nexus. *See Miranda v.*

*Pexco, LLC*, No. 2021 CH 02127 (Ill. Cir. Ct. Aug. 23, 2023) (reproduced at Dkt. 68 at PDF 24-52). In that case, the court explained that "the key issue here is the phrase 'when working for,'" and held that it "means that it is during the same period of time that plaintiff was working for the defendant," and "does not mean while defendant is actively working on fulfilling the government contract or while plaintiff is working on that contract." *Id.* at 43-44. In other words, *Miranda* concluded, "[i]t's a temporal question. The question is, was plaintiff working for defendant during the same time that defendant had a government contract and was a government contractor or subcontractor?" *Id.* at 44. The district court read other Illinois decisions as adopting a different approach and requiring a substantive nexus between the government contract and the alleged BIPA violations. Dkt. 90 at 4 (citing *Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U).

As the district court correctly concluded, Union Pacific presents a "reasonable interpretation[] of the statutory language at issue." By its plain terms, Section 25(e) imposes a straightforward temporal test focusing on whether a government contractor accused of violating BIPA did so "when working for" the government. 740 ILCS 14/25(e). By its very nature, the term "when" is temporal, meaning the time at which something occurs. *See When*, *Merriam-Webster.com* (last visited Nov. 5, 2025) (defining "when" as "at or during the time that"). And Illinois courts interpret statutes consistent with the settled principle that statutory terms should be given their "popularly understood meaning[s]." *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1043 (Ill. 2012).

Other authorities support this commonsense reading of Section 25(e). The Illinois Bill Drafting Manual in effect in 2008, when BIPA was enacted, provided the General Assembly with rules for drafting legislation, including a "Glossary" section that "states rules for using certain words and phrases and gives examples of correct usage." Legislative Reference Bureau, *Illinois Bill Drafting Manual* § 90-30, at 279 (Jan. 2007) (Dkt. 88-1). The *Manual* provided that "'when' indicates a time," "'if' indicates a condition," and it admonishes legislators to be "especially careful in using ... when"—"if you are expressing a condition, use 'if' instead." *Id.* at 291. Thus, had the General Assembly wished to provide that the contractor exemption applies only "if" a defendant's collection of biometric information is substantively related to its government contracts, it knew how to say so. But by using "when," Section 25(e) embraces a temporal approach.

The Supreme Court's recent decision in *Feliciano v. Department of Transportation*, 605 U.S. 38 (2025), provides further support for a temporal reading of Section 25(e). There, the Court addressed a statutory construction issue asking whether military reservists are entitled to "differential pay" when they have been called to active duty "during a national emergency." *Id.* at 41. That question turned on whether the statutory term "during a national emergency" means that reservists must be given that pay "while a national emergency is ongoing," or whether a reservist must "prove some additional, substantive connection between his service and a particular national emergency." *Id.* at 44. The Court held that the statute

"imposes a temporal condition alone" because the plain meaning of the word "'during' does not imply a substantive connection." *Id.* at 46, 44. The same goes for "when."

The district court's twin rationales for embracing a substantive nexus test are flawed. First, the court relied on the canon against surplusage to conclude that, if Section 25(e) imposed a purely temporal test, the phrase "when working for that State agency or local unit of government" would be redundant. Dkt. 90 at 5. But that phrase still has work to do if Section 25(e) is properly read to impose a purely temporal test: Had Section 25(e) said only that "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government," there would a risk that defendants who previously had active contracts—or had contracts that would become active only in the future—might seek shelter under Section 25(e). The phrase "when working for that State agency or local unit of government" requires that the defendant have an active or current government contract at the time of the alleged BIPA violation. "That may not be very heavy work for a phrase to perform, but a job is a job, and enough to bar the rule against redundancy from disqualifying an otherwise sensible reading." *Polselli v. IRS*, 598 U.S. 432, 443 (2023) (citation omitted).

Second, the district court thought it "absurd" that "a large company with a single government contract would be categorically exempt from BIPA even when the company's BIPA violations were entirely unrelated to the contract." Dkt. 90 at 6. But the Illinois Supreme Court "has repeatedly held"—including under BIPA—that where statutory language is clear, it must be given effect, 'even though the

consequences may be harsh, unjust, absurd or unwise.'" *Cothron*, 216 N.E.3d at 928 (adopting an interpretation of BIPA that could result in $17 billion in damages against White Castle) (quoting *Petersen v. Wallach*, 764 N.E.2d 19, 24 (Ill. 2002)).

## C. An Immediate Appeal Will Materially Advance The Termination Of This Litigation.

Finally, certification is appropriate because "an immediate appeal *may* materially advance the ultimate termination of the litigation." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). As noted, if this Court disagrees with the district court's reading of Section 25(e) and concludes it imposes a purely temporal test for determining whether a government contractor is exempt under BIPA, Union Pacific will be entitled to summary judgment and this case will be over. That more than meets the test under Section 1292(b).

This Court has shown particular attentiveness to the novel and important legal questions involved in the scores of BIPA cases pending in this Circuit. This case raises yet another novel legal question concerning BIPA's proper interpretation, and the question here is case dispositive. Moreover, whether Section 25(e) imposes a purely temporal test will have ramifications in any BIPA cases in which a defendant is a government contractor. Just as this Court concluded that interlocutory resolution of critical legal questions relating to BIPA was appropriate in *Cothron*, *Amazon*, and *Clay*, the issue presented here is appropriate for resolution on an interlocutory basis under Section 1292(b).

## CONCLUSION

This Court should grant Union Pacific's request for an interlocutory appeal of the district court's order.

Dated: November 7, 2025

Respectfully submitted,

*/s/ Gary Feinerman*
Gary Feinerman
Sean M. Berkowitz
Johanna Spellman
Kathryn A. Running
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700

Ben Harris
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Counsel for Defendant-Petitioner Union Pacific Railroad Company*

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c)(1) because it contains 3,436 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This petition complies with the typeface requirements and type-style requirements of Federal Rule of Appellate Procedure 32(a), as amended by Seventh Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

Dated: November 7, 2025

/s/ Gary Feinerman
Gary Feinerman

# CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2025, the foregoing document and its exhibits were electronically filed with the Clerk of the United States Court of Appeals for the Seventh Circuit by email to USCA7_clerk@ca7.uscourts.gov. I further certify that on November 7, 2025, I caused a copy of this filing to be served by email and by FedEx next business day delivery on counsel for Plaintiffs-Respondents:

David Michael Bizar
DJC LAW, PLLC
1012 W. Anderson Lane
Austin, TX 78757
(512) 220-1800
dbizar@teamjustice.com

Samuel Louis Eirinberg
DJC LAW, PLLC
140 S. Dearborn St., Suite 1610
Chicago, IL 60603
(847) 778-5622
sam@teamjustice.com

*/s/ Gary Feinerman*
Gary Feinerman

# ADDENDUM

Pursuant to Federal Rule of
Appellate Procedure 5(b)(1)(E)

# TABLE OF CONTENTS

**DESCRIPTION**                                                    **EXHIBIT**

Memorandum and Order Denying Union Pacific's Motion for Summary Judgment (Aug. 25, 2025), Dkt. 90........................................................... A

Certification Memorandum Opinion and Order (Oct. 28, 2025), Dkt. No. 98....................................................................................................... B

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Ernest Payton, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 24 C 153 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Union Pacific Railroad Company, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs contend that Defendant Union Pacific Railroad Company collected their fingerprints in violation of the Illinois Biometric Information Privacy Act ("BIPA"). Union Pacific moves for summary judgment on the basis that it is exempt from BIPA claims. For the reasons stated below, the motion is denied.

**Legal Standard**

Summary judgment is appropriate if the movant "'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "[S]peculation is not enough to create a genuine issue of fact for the purposes of summary judgment." *Tousis v. Billiot*, 84 F.4th 692, 696 (7th Cir. 2023) (citations omitted). The Court examines the record and draws all reasonable inferences in the light most favorable to the nonmovant. *Spurling*, 739 F.3d at 1060.

**Background**

As part of its freight railroad, Union Pacific operates intermodal facilities where freight is transferred between trains and trucks. R. 76 ¶¶ 4–5. From 2013 to 2021, Union Pacific relied on an automated gate system that used fingerprint scans to verify the identity of truck drivers who accessed Union Pacific's intermodal facilities in Illinois. *Id.* ¶ 18. Plaintiffs are a group of commercial truck drivers who contend that Union Pacific collected their fingerprints in violation of BIPA. *Id.* ¶¶ 21–24. In relevant part, BIPA provides: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e). Union Pacific contends that it is categorically exempt from BIPA under § 25(e) because it had government contracts from 2013 to 2021. R. 65 at 12–13. Whether Union Pacific is exempt under § 25(e) is the sole issue in dispute on summary judgment. *Id.*

The following facts are relevant to Union Pacific's exemption argument. From 2013 to 2021, Union Pacific was a contractor for Metra (a municipal organization) and operated three of Metra's commuter trains. R. 76 ¶¶ 54–57. Also, from 2013 to 2021, Union Pacific participated in the Chicago Region Environmental and Transportation Efficiency ("CREATE") program, a public-private partnership to improve Chicago-area railroads that included the State of Illinois, various local governments, and railroad companies such as Union Pacific. *Id.* ¶¶ 25–26. As part of the CREATE program, Union Pacific entered a contract with the Illinois Department of Transportation ("IDOT") to perform design work related to bridges. *Id.* ¶ 29. Union Pacific entered additional contracts with IDOT from 2013 to 2021 to review engineering plans for a highway overpass near Edwardsville and to improve railroad crossings in Chicago, Martinton, Mason City, Mill Creek, St. Elmo, Steeleville, and Rankin. *Id.* ¶¶ 32–39. Finally, from 2019 through 2021,

2

Union Pacific was a subcontractor for federal agencies such as the U.S. Postal Services and the U.S. Department of Defense and transported shipments for these agencies, some of which passed through Union Pacific's intermodal facilities in Illinois. *Id.* ¶¶ 58–61.[1]

## Discussion

### I.   Categorical Exemption

As stated above, the issue is whether Union Pacific is exempt from BIPA under § 25(e). When applying substantive state law, "[federal] courts sitting in diversity look first to the state's highest court for guidance." *Merner v. Deere & Co.*, 176 F. Supp. 2d 882, 885 (E.D. Wis. 2001). The Illinois Supreme Court, however, has not yet interpreted § 25(e). In this circumstance, absent "prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's [] appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). Absent clarifying authority from Illinois courts, federal courts may rely on principals of statutory interpretation, and "[b]ecause BIPA is an Illinois law, [federal courts] must apply Illinois' statutory interpretation rules." *Duerr v. Bradley Univ.*, 590 F. Supp. 3d 1160, 1168 (C.D. Ill. 2022). In Illinois, the "primary rule of statutory construction is to ascertain and give effect to the intent of the legislature, and the best evidence of legislative intent is the statutory language." *In re Hernandez*, 918 F.3d 563, 569 (7th Cir. 2019) (citations omitted). "Illinois law recognizes interpretive canons against surplusage and absurdity [and courts] must construe the statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous." *Id.*

---

[1] Union Pacific asserts that it handled shipments for federal agencies prior to 2019 but "[d]ue to data retention limits, Union Pacific's records only reflect such shipments since 2019." R. 67-9 ¶ 3. As such, Union Pacific takes the position that it was a subcontractor for federal agencies starting in 2019. *See* R. 65 at 18.

Here, the Court and parties have identified just one decision by an Illinois appellate court that substantively addresses § 25(e)—*Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U. The *Enriquez* Court explained that "an entity is exempt under section 25(e) if it is (1) a contractor (2) of a unit of government and (3) was working for that unit of government at the time it collected or disseminated biometric information." 2022 IL App (1st) 211414-U at ¶ 19. Critically, regarding whether the defendant "was working for that unit of government at the time it collected or disseminated biometric information," the *Enriquez* Court found that the defendant was exempt, because the violation of BIPA had been "within the scope" of the relevant contract with the unit of government. *Id.* ¶¶ 19–25.[2] In other words, under *Enriquez*, § 25(e) does not provide a categorical exemption for government contractors but rather, it requires a nexus between the BIPA violation and the scope of the defendant's work with the government.

In addition to *Enriquez*, the partes have identified three unpublished oral rulings on motions to dismiss before Illinois trial courts which address § 25(e). Two of those courts have suggested, similar to *Enriquez*, that there is not a categorical exemption for government contractors. *See* R. 75-2 at 8 (unpublished transcript from *Rojo v. Homer Tree Care, Inc.*, No. 23 L 8588 (Ill. Cir. Ct., Cook Cnty., Law Div., May 29, 2024) (distinguishing between the defendant's government contracts and private contracts)); R. 75-3 at 16 (unpublished transcript from *Navarette v. Josam*

---

[2] In *Enriquez*, the Metropolitan Pier and Exposition Authority ("MPEA") was a governmental entity that owned Navy Pier and that transferred operational responsibility for Navy Pier to the defendant Navy Pier, Inc. ("NPI") via a written agreement. 2022 IL App (1st) 211414-U, ¶¶ 8–10. Under the agreement, NPI was tasked with hiring and employing personnel to operate Navy Pier, and NPI collected the employees' biometric information as they clocked in and out. *Id.* ¶¶ 10–12. The *Enriquez* Court concluded that NPI "was working for the government" at the time it collected the biometric information because "NPI's actions that form the basis for the complaint were *within the scope* of its work for the MPEA." *Id.* ¶ 25 (emphasis added). Specifically, the plaintiff employee's claims "all stem[med] for her employment with NPI, which employed her as part of its obligation to operate and manage Navy Pier [and] NPI's authority to [employ her] arose from its contract with the MPEA." *Id.*

4

*Acquisitions*, No. 2019 CH 14368 (Ill. Cir. Ct. Mar. 29, 2021) ("[Section 25(e) does not exclude an employer like Defendant who only does some work for government via contractual obligations.")). One court found, however, that any government contractor was categorically exempt. *See* R. 75-4 at 9 (unpublished transcript from *Miranda v. Pexco, LLC*, No. 2021 CH 02127 (Ill. Cir. Ct., Chancery Div., Aug. 23, 2023) ("What does 'when working for' mean? And my finding is that that means that it is during the same period of time that plaintiff was working for the defendant. It does not mean while defendant is actively working on fulfilling the government contract or while plaintiff is working on that contract.")).

Here, in interpreting § 25(e), the Court follows *Enriquez*, *Rojo*, and *Navarette*, not only because these cases represent the weight of authority, but because they provide a more reasonable and commonsense reading of BIPA's plain language. As noted above, § 25(e) states: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." If the Illinois Legislature wished to categorically exempt all defendants who were government contractors, the Legislature would have only needed to include the first half of the sentence: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government." Such language would categorically exempt any government contractor, regardless of whether the BIPA violation was within the scope of the defendant's work with the government. To read the entirety of § 25(e) as a categorical exemption thus renders the second half of § 25(e) superfluous. In turn, a reasonable reading of § 25(e) that does not render the second half superfluous is as follows: by including the language "when working for that State agency or local unit of government," the Legislature intended to require a nexus between the BIPA violation and the scope of the defendant's work with the government.

The Court further notes that a categorical exemption would lead to absurd results in which a large company with a single government contract would be categorically exempt from BIPA even when the company's BIPA violations were entirely unrelated to the contract. Indeed, the facts of this case highlight the absurdity. For example, from May 2017 to October 2017, Union Pacific entered into a contract with the Illinois Department of Transportation to improve a railroad crossing in Steeleville. R. 76 ¶ 35. Steeleville is a small town in southern Illinois, over three hundred miles away from the intermodal facilities in Chicago. The fact that Union Pacific improved a single railroad crossing in Steeleville is entirely unrelated to the collection of truck drivers' fingerprints at its intermodal facilities. To read § 25(e) as categorically exempting Union Pacific from BIPA for those six months of 2017 would be an absurd result.

For the reasons stated above, the Court finds that Union Pacific is not categorically exempt from BIPA under § 25(e). In turn, the critical question is as follows: when Union Pacific collected Plaintiffs' fingerprints, did that occur "within the scope" of Union Pacific's work as a government contractor?

## II.     Within the Scope

The Court first addresses Union Pacific's contracts with Metra. Union Pacific argues that the Metra contracts are connected to the fingerprinting because the "rail lines used for Metra's commuter service are the same rail lines that bring freight in and out of Union Pacific's Chicago intermodal terminals." R. 65 at 11. But the mere fact of overlapping rail lines is insufficient to establish a nexus. The Metra contracts dealt with commuter trains while the truck drivers transported commercial goods. The fingerprint collection was not within the scope of the Metra contracts.

6

The Court next addresses Union Pacific's participation in the CREATE program and its contracts with IDOT. Union Pacific argues that the work performed "under these contracts is important to ensuring [that] railroad infrastructure and adjacent roadways are safe and well maintained, and to improving the efficiency of rail freight flows." R. 65 at 10. True, when Union Pacific makes improvements to railroad infrastructure, this creates efficiency gains that impact the system as a whole. But these contracts involved improvements to railroad crossings, bridges, and highway overpasses. When Union Pacific entered a contract with IDOT, for example, to fix a railroad crossing in Chicago or Steeleville, that contract was unrelated to fingerprint collection at the intermodal facilities. No reasonable person on either side of that contract—whether representing Union Pacific or IDOT—would believe that the contract somehow implicated fingerprint collection for commercial truck drivers. The fingerprint collection was thus not within the scope of the CREATE program or the IDOT contracts.

Finally, the Court addresses Union Pacific's work as a subcontractor for federal agencies, and the fact that shipments from these agencies passed through the intermodal facilities. As a preliminary matter, § 25(e) exempts a contractor or subcontractor "of a State agency or local unit of government." The threshold question is thus whether § 25(e) applies to Union Pacific's work as a *federal* subcontractor. If § 25(e) does apply, the fact that the shipments passed through the intermodal facilities (and may have ended up on the trucks) suggests a possible connection that warrants further investigation. Union Pacific filed its motion for summary judgment prior to the close of discovery, and the parties agreed to stay discovery pending the motion. R. 73. The Court finds that resolution of this final issue (regarding Union Pacific's work as a federal subcontractor) would be better resolved on a fully developed record at the conclusion of discovery. The parties may thus reraise this issue at the conclusion of discovery.

7

**Conclusion**

For the foregoing reasons, Union Pacific's motion [65] for summary judgment is denied.

By 9/5/25, the parties shall file a joint status report setting forth: (A) whether the parties wish to

engage in settlement discussions in light of the Court's ruling; and (B) a proposed schedule to

resume and complete discovery.


**SO ORDERED.**                                    **ENTERED: August 25, 2025**

**HON. JORGE L. ALONSO**
**United States District Judge**

8

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Ernest Payton, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 24 C 153 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Union Pacific Railroad Company, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs contend that Defendant Union Pacific Railroad Company collected their fingerprints in violation of the Illinois Biometric Information Privacy Act ("BIPA"). Union Pacific moved for summary judgment on the basis that it is exempt from BIPA claims. The Court denied Union Pacific's motion at R. 90 ("Decision"). Union Pacific now moves for the Court to certify the Decision for interlocutory appeal. The motion to certify is granted.

### Discussion

A district may certify an otherwise non-appealable order for interlocutory appeal if the order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Seventh Circuit has explained that § 1292(b) provides "four statutory criteria" as follows: 1) there must be a question of law; 2) it must be controlling; 3) it must be contestable; and 4) its resolution must promise to speed up the litigation. *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000). The district court has a "duty . . . to allow an intermediate appeal to be taken when the statutory criteria are met." *Id.* at 677.

### I. Question of Law

As used in § 1292(b), a "question of law" refers "to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz*, 219 F.3d at 676. In other words, it must be a "pure" question of law which the court of appeals can decide "quickly and cleanly without having to study the record." *Id.* at 677. Here, in relevant part, BIPA provides: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e). Union Pacific argues that the language of § 25(e) imposes a "purely temporal test for determining whether a government contractor is exempt from BIPA liability." R. 93 at 3. In ruling on summary judgment, however, the Court rejected the purely temporal test and found that for a government contractor to be exempt, the BIPA violation must have occurred "within the scope" of a government contract. R. 90 at 6. The issue for interlocutory appeal does not concern whether or not the BIPA violations in this case were within the scope of any particular government contracts. Rather, the issue remains abstracted from the facts as a pure question of law: Does § 25(e) impose a purely temporal test or must the BIPA violation occur within the scope of a government contract?

### II. Controlling

"For an issue to be controlling, it must be likely to affect the course of the litigation that save time and expense for the district court." *Lysengen v. Argent Tr. Co.*, 2024 WL 2032927, at *3 (C.D. Ill. May 6, 2024). Certainly, an issue is controlling if its resolution "could put an end to [the] litigation." *In re Potash Antitrust Litig.*, 2010 WL 11583542, at *2 (N.D. Ill. Jan. 13, 2010). Here, if the Seventh Circuit affirms that § 25(e) requires a nexus, the case would return to this Court to determine if Union Pacific's BIPA violations occurred within the scope of Union Pacific's

government contracts. If the Seventh Circuit finds, however, that § 25(e) imposes a purely temporal test, that would immediately end the litigation as Union Pacific would be categorically exempt from BIPA. The issue is thus controlling.

## III.    Contestable

"A question is contestable when substantial grounds for a difference of opinion exist." *In re Lion Air Flight JT 610 Crash*, 2023 WL 3653217, at *4 (N.D. Ill. May 25, 2023). It must be a "difficult central question of law which is not settled by controlling authority," and there must exist a "substantial likelihood" that the district court's ruling will be reversed. *Id.* (citations omitted). First, there is no controlling authority that decides this question. Neither the Seventh Circuit nor the Illinois Supreme Court has weighed in. As the Court described in its opinion, the question has been addressed by just one Illinois appellate court and three Illinois trial courts, and these courts were divided. R. 90 at 4–5. Second, though the Court believes its opinion was rightly decided, the Court recognizes that both parties offer reasonable interpretations of the statutory language at issue. The issue is thus contestable.

## IV.    Impact on Speed of the Litigation

The final element is satisfied if "an immediate appeal may materially advance the ultimate termination of the litigation." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2013). As stated above, if the Seventh Circuit agrees with Union Pacific's interpretation of the statute, then Defendants would be entitled to summary judgment, and the case would be over. Such a result would materially advance the litigation.[1]

---

[1] The Court notes that a decision on this issue would streamline future BIPA cases as well. The Court also notes that the Seventh Circuit has previously granted petitions for interlocutory appeals in other BIPA cases where the parties have raised novel issues of BIPA's interpretation. *See, e.g., Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156 (7th Cir. 2021).

3

**Conclusion**

For the foregoing reasons, Union Pacific's motion [93] is granted, and the Court certifies its Decision [90] for interlocutory appeal. The case is stayed pending resolution of the interlocutory appeal, and the parties shall file a joint status report within 10 days of that resolution.

**SO ORDERED.**                                    **ENTERED: October 28, 2025**

**HON. JORGE L. ALONSO**
**United States District Judge**

4