No. 25-8031

## United States Court of Appeals
## for the Seventh Circuit

———————————

Ernest Payton, et al.,

*Plaintiffs-Respondents*

*v.*

*Union Pacific Railroad Company*,

*Defendant-Petitioner*

———————————

On Petition for Permission to Appeal from the
United States District Court for the Northern District of Illinois
No. 1:24-cv-01153 (Hon. Jorge L. Alonso)

———————————

## RESPONSE IN OPPOSITION TO PETITION TO APPEAL
## PURSUANT TO 28 U.S.C. § 1292(b)

———————————

David M. Bizar
Andres Pereira
DJC Law, PLLC
1012 W Anderson Ln
Austin, TX 78757
(512) 220-1800
dbizar@teamjustice.com
apereira@teamjustice.com

*Counsel for Plaintiffs-Respondents Ernest Payton, Tommy Hill, Marcus Wright, David Uti, Jorge Santoyo, Maurice Madkins, Llewellyn Lenard, Tony Johhson, JC Johnson II, Periss Crawford, Sunair Ramchandani, and Jerome Buckner*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-8031

Short Caption: Payton v. Union Pacific Railroad Company

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Ernest Payton, Tommy Hill, Marcus Wright, David Uti, Jorge Santoyo, Maurice Madkins, Llewellin Lenard, Tony

Johnson, JC Johnson II, Sunair Ramchandani, Jerome Buckner

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

DJC Law, PLLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ David M. Bizar    Date: 11/24/2025

Attorney's Printed Name: David M. Bizar

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes [✔] No [ ]

Address: DJC Law, PLLC, 1012 W Anderson Ln, Austin, Texas 78757

Phone Number: 512-220-1800    Fax Number: 512-220-1801

E-Mail Address: dbizar@teamjustice.com

rev. 12/19 AK

# TABLE OF CONTENTS

APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ............... i

TABLE OF AUTHORITIES ................................................................................. iii

I. INTRODUCTION ................................................................................... 1

II. BACKGROUND ..................................................................................... 1

    A. Statutory ............................................................................................. 1

    B. Factual ................................................................................................ 3

    C. Proceedings Below ............................................................................ 4

III. REASONS FOR DENYING THE PETITION ......................................... 5

    A. Defendant's Petition is not ripe enough to warrant
       immediate review .............................................................................. 6

    B. The *Arenholz* criteria have not been met ....................................... 7

        1. *The first criterion, that the issue must be a question
    of law, is not met* ............................................................................. 8

        2. *The second criterion, that the issue must be controlling,
    is not met* ....................................................................................... 10

        3. *The third criterion, that the issue must be contestable,
    is not met* ....................................................................................... 11

        4. *The fourth criterion, that the issue must promise to
       speed up the litigation, is not met* ..................................... 19

IV. CONCLUSION ..................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Arenholz v. Board of Trustees,*
   219 F.3d 674 (7th Cir. 2000) .......................................................... 1, 6, 7, 8, 10, 19

*Bonaguro v. County Officers Electoral Bd.,*
   158 Ill. 2d 391, 634 N.E.2d 712, 199 Ill. Dec. 659 (Ill. 1994) ............................. 15

*Bryant v. Compass Group USA, Inc.,*
   958 F.3d 617 (7th Cir. 2020) ................................................................... 6, 16

*City of East St. Louis v. Union Electric Co.,*
   37 Ill. 2d 537, 229 N.E.2d 522 (1967) ........................................................ 18

*Clay v. Union Pacific Railroad Co.,*
   No. 25-2185 .......................................................................................... 6

*Consumer Fin. Prot. Bur. v. TransUnion,*
   674 F. Supp. 3d 467, 471 (N.D. Ill. May 23, 2023) .......................................... 19

*Coopers & Lybrand v. Livesay,*
   437 U.S. 463, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978) ...................................... 11

*Cothron v. White Castle Sys., Inc.,*
   2023 IL 128004, 216 N.E.3d 918, 466 Ill. Dec. 85 (Ill. 2023) ................... 2, 17, 18

*Cothron v. White Castle Sys., Inc.,*
   20 F.4th 1156 (7th Cir. 2021) ................................................................... 6

*Edwardsville Nat'l Bank and Trust Co. v. Marion Laboratories, Inc.,*
   808 F.2d 648 (7th Cir. 1987) ..................................................................... 7

*Emley v. Wal-Mart Stores, Inc.,*
   No. 1:17-cv-02350, 2020 U.S. Dist. LEXIS 3723,
   2020 WL 108374 (S.D. Ind. Jan. 8, 2020) ................................................. 11, 12

*Enriquez v. Navy Pier, Inc.,*
   2022 IL App (1st) 211414-U (Ill. App. Ct. (1st) Sept. 27, 2022)
   (unpublished) ....................................................................................... 13

*Fleury v. Union Pacific Railroad Co.,*
   N.D. Ill. No. 20-cv-390 ........................................................................... 5

*Flynn v. Exelon Corp.,*
 No. 1:19-cv-8209, 2022 U.S. Dist. LEXIS 15806
 2022 WL 267915 (N.D. Ill. Jan. 28, 2022)...................................................... 11, 13

*Herdrich v. Pegram,*
 154 F.3d 362 (7th Cir. 1998), rev'd on other grounds,
 530 U.S. 211, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000).................................... 19

*Hubble v. Bi-State Dev. Agency of the Illinois-Missouri Metro. Dist.,*
 238 Ill. 2d 262, 938 N.E.2d 483, 345 Ill. Dec. 44 (Ill. 2010) ............................... 18

*In re Hernandez,*
 918 F.3d 563, 569 (7th Cir. 2019)......................................................................... 15

*In re Lion Air Flight JT 620 Crash,*
 2023 WL 3653217 (N.D. May 25, 2023) ............................................................... 11

*Lysengen v. Argent Trust Co.,*
 No. 20-cv-1177, 2024 U.S. Dist. LEXIS 82947 (C.D. Ill. May 6, 2024).............. 10

*McDonald v. Symphony Bronzeville Park, LLC,*
 2022 IL 126511, 193 N.E.3d, 456 Ill. Dec. 845 (Ill. 2022) .................................. 19

*Miranda v. Pexco, LLC,*
 No. 2021 CH 02127 (Ill. Cir. Ct., Chancery Div., Aug. 23, 2023)
 (unpublished transcript)........................................................................................ 13

*Moomaw v. Geosnapshot Pty Ltd.,*
 No. 3:23-cv-1321, 2025 U.S. Dist. LEXIS 41010,
 2025 WL 72113012 (S.D. Ill. Mar. 6, 2025)...................................................... 8, 10

*Munchkin v. Tomy Int'l, Inc.,*
 No. 18 C 6337, 2023 U.S. Dist. LEXIS 241861,
 2023 WL 11921670 (S.D. Ill. Mar. 6, 2025)........................................................... 8

*Navarette v. Josam Acquisitions,*
 No. 2019 CH 14368 (Ill. Cir. Ct. Mar. 29, 2021),
 (unpublished transcript)........................................................................................ 13

*People v. Clark,*
 2024 IL 130364, 248 N.E.3d 1087, 479 Ill. Dec. 82 (Ill. 2024) ........................... 18

*Richard v. Eli Lilly & Co.,*
 No. 1:23-cv-00242, 2024 U.S. Dist. LEXIS 85773,
 2024 WL 2126103 (S.D. Ind. May 10, 2024) ........................................................ 12

*Rogers v. BNSF Railway Co.*,
No. 19-cv-03083, 2022 U.S. Dist. LEXIS 109394,
2022 WL 2208824 (N.D. Ill. Jun. 21, 2022) ...................................................... 13

*Rojo v. Homer Tree Care, Inc.*,
No. 23 L 8588 (Ill. Cir. Ct., Law Div. May 29, 2024)
(unpublished transcript) ...................................................................................... 13

*Rosenbach v. Six Flags Ent't Corp.*,
2019 IL 123186, 129 N.E.3d 1197, 432 Ill. Dec. 654 (Ill. 2019) ..................... 2, 16

*Shah v. Zimmer Biomet Holdings, Inc.*,
No. 3:16-CV-815-PPS-MGG, 2019 U.S. Dist. LEXIS 27245
2019 WL 762510 (N.D. Ind. Feb. 20, 2019) .......................................................... 14

*Sokogon Game Enter. Corp. v. Tushie-Montgomery Assocs.*,
86 F.3d 656 (7th Cir. 1996) ..................................................................................... 10

*State Farm Fire & Casualty Co. v. Yapejian*,
152 Ill. 2d 533, 605 N.E.2d 539, 178 Ill. Dec. 745 (Ill. 1992) .............................. 18

*Sterk v. Redbox Automated Retail, LLC*,
672 F.3d 535, 536 (7th Cir. 2012) ........................................................................... 19

*Svoboda v. Amazon.com Inc.*,
No. 25-1361 ................................................................................................................ 6

*Thornley v. Clearview AI, Inc.*,
984 F.3d 1241, 1242 (7th Cir. 2021) ......................................................................... 6

## Statutes

28 U.S.C. § 1292 .......................................................... 1, 5, 6, 7, 8, 10, 14, 20

28 U.S.C. § 1453 .............................................................................................. 6

740 ILCS 14/1 .............................................................................................. 1, 2

740 ILCS 14/5 ................................................................................................ 16

740 ILCS 14/10 .............................................................................................. 16

740 ILCS 14/15 ................................................................................................ 4

740 ILCS 14/20 ................................................................................................ 2

740 ILCS 14/25 .......................................................................................... 9, 15

P.A. 103-0769 ......................................................................................................... 6

Plaintiffs-Respondents, Ernest Payton, Tommy Hill, Marcus Wright, David Uti, Jorge Santoyo, Maurice Madkins, Llewellyn Lenard, Tony Johhson, JC Johnson II, Periss Crawford, Sunair Ramchandani, and Jerome Buckner, respectfully oppose the Petition.

## I.    INTRODUCTION

Defendant's Petition should be denied because Defendant has not come close to meeting its heavy burden to show that exceptional circumstances justify departing from the basic policy of postponing appellate review until after the entry of final judgment. Defendant fails to satisfy any of the four statutory criteria of Title 28, U.S.C, §1292(b) that this Court has held must each be met to grind an ongoing case to a halt mid proceedings through an immediate appeal of a non-final order. Specifically, as will be demonstrated below, Defendant has not established under *Arenholz v. Board of Trustees*, 219 F.3d 674, 676 (7th Cir. 2000) that its proposed appeal is: (1) from a pure question of law; (2) on a controlling issue; (3) for which a substantial ground for difference of opinion exists; and (4) the interlocutory resolution of which promises to speed up the ultimate termination of the litigation.

## II.    BACKGROUND

### A. Statutory

Recognizing the need to protect its citizens' biometric identifiers and information, in 2008 Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, to serve "[t]he public welfare, security, and safety … by regulating the collection, use, safeguarding, handling, storage, retention, and

destruction of biometric identifiers and information." 740 ILCS 14/1(g). BIPA provides a private right of action for damages under 740 ILCS §14/20. The version of BIPA that was in effect at the time of the Complaint's filing in January of 2024 affords statutory, liquidated damages of $1,000 for each negligent violation of Sections 15(a), (b) and (d) of BIPA pursuant to 740 ILCS §14/20(1), and statutory, liquidated damages of $5,000 for each intentional and/or reckless violation of Sections 15(a), (b) and (d) of BIPA pursuant to 740 ILCS §14/20(2). *See Cothron v. White Castle Sys., Inc.,* 2023 IL 128004, ¶¶40-41 (2023); *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶34 (2019).

While there are benefits to using biometric scanners for controlling access to facilities, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints and finger characteristics, or scans of hand geometry, are unique and permanent biometric identifiers which are associated with an individual. Thus, the collection of biometrics exposes individuals to serious and irreversible privacy risks. For example, if a biometric identifier database is hacked, breached, or otherwise exposed, the affected individuals have no means by which to prevent identity theft and unauthorized tracking. If a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of their immutable personal identifiers.

Defendant concedes that Defendant "used finger scan technology at its Illinois intermodal facilities." Petition at 6 (citing Dkt. 65 at 4-8). The Complaint alleges "that by using this system, Union Pacific collected their biometric information and thereby violated BIPA." *Id*. (citing Dkt. 1 ¶¶44-46, 65-66, 71-80)).

**B. Factual**

Defendant's Petition glaringly omits that it stipulated in the proceedings below that: "For purposes of the Motion for Summary Judgment only" that "[w]hen Plaintiffs' fingers were scanned at Union Pacific's intermodal facilities, Plaintiffs were not performing work pursuant to the state or local government contracts cited in Union Pacific's Motion for Summary Judgment." Joint Motion to Enter an Agreed Briefing Schedule and Stay Discovery Pending Ruling on Union Pacific Railroad Company's Motion for Summary Judgment ("Joint Motion"), Dkt. # 71 ¶4. This concession was fatal to Defendant's summary judgment motion and it is to Defendant's premature appeal as well.

Defendant's Petition provides details only for Defendant's proffered factual conclusion that "Union Pacific has long contracted with the State of Illinois, for a wide array of projects during the entire period it used finger scan technology at the relevant intermodal facilities." Petition at 5 (citing Dkt. 65 at 2-4). But it is undisputed that none of the projects had anything at all to do with biometrics or required Defendant to collect biometrics in the manner that it did.

Defendant does not assert that it was required by any government contract or subcontract to collect Plaintiffs' fingerprints at its Illinois intermodal facilities or that

its collection of their fingerprint data was related to its fulfillment of any government contracts or subcontracts. Defendant's sole purported basis to invoke BIPA's government contractor exemption at this juncture is, rather, that Section 25(e) purportedly "requires only a temporal nexus—meaning that government contractors are exempt from BIPA *during the time* they maintain active government contracts" and does not "require[] some further substantive nexus between a contractor's alleged collection of biometric information and its government contracts." Petition at 2 (emphasis in original).

### C. Proceedings Below

The Complaint, filed by Plaintiffs in January 2024 (Dkt. #1), asserts three counts under BIPA. The first alleges that Defendant failed to institute, maintain, and adhere to a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA in 740 ILCS §15(a), or to inform Plaintiffs of the existence of one. The second asserts that Defendant obtained and used Plaintiffs' biometric identifiers without first obtaining the written release required by BIPA, 740 ILCS §14/15(b)(3). And the third claims that Defendant disclosed Plaintiffs' biometric identifiers and biometric information without obtaining their consent as required by BIPA, 740 ILCS §14/15(d)(1).

Defendant filed its pre-discovery motion for summary judgment on February 10, 2025. Dkt. # 65-68. Plaintiffs filed their opposition on March 7, 2025. Dkt. #75-77. Defendant filed its reply on March 21, 2025. Dkt. #78. On May 25, 2025, Amici Curiae

David Fleury and Alvin Turner, individually and on behalf of the putative class in *Fleury v. Union Pacific Railroad Co.*, N.D. Ill. No. 20-cv-390, filed a Motion for Leave to File Brief of Amici Curiae David Fleury and Alvin Turner in Opposition to Defendant's Motion for Summary Judgment. Dkt. #79. On May 7, 2025, the District Court granted Amici Curiae's motion. Dkt. #83. On May 7, 2025, Amici Curiae filed their Brief. Dkt. #84. On June 6, 2025, Defendant filed Defendant Union Pacific Company's Response to Brief of Amici Curiae David Fleury and Alvin Tuner. Dkt. #88. On August 25, 2025, the District Court entered its Memorandum Opinion and Order ("Summary Judgment Order"), denying Defendant's motion for summary judgment. Dkt. #90.

On September 10, 2025, Defendant filed Defendant Union Pacific Company's Opposed Motion to Certify August 25, 2025 Order for Interlocutory Appeal. Dkt. #93. On September 23, 2025, Plaintiffs filed Plaintiffs' Memorandum in Opposition to Defendant Union Pacific Railroad Company's Motion for Interlocutory Appeal. Dkt. #96. On October 3, 2025, Defendant filed Defendant Union Pacific Company's Reply in Support of Motion to Certify August 25, 2025 Order for Interlocutory Appeal. Dkt. #97. On October 28, 2025, the District Court entered its Memorandum Opinion and Order ("Interlocutory Appeal Order") granting Defendant's motion to certify. Dkt. #98.

### REASONS FOR DENYING THE PETITION

As will be demonstrated below, Union Pacific's Petition fails to satisfy any of the "four statutory criteria for the grant of a section 1292(b) petition to guide the

district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Arenholz* at 675 (emphasis in original). And all four must be met.

A.   <u>Defendant's Petition is not ripe enough to warrant immediate review.</u>

Unlike other BIPA appeals that this Court has accepted interlocutory, here Defendant does not present an issue of near-universal relevance like subject-matter jurisdiction, claim accrual, generally applicable issues related to class certification, or the applicability of a BIPA amendment to all of the pending BIPA cases filed prior to the August 2, 2024 effective date of P.A. 103-0769, amending BIPA. *Cf. Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1242 (7th Cir. 2021) (28 U.S.C. §1453(c)(1) appeal regarding subject-matter jurisdiction); *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617 (7th Cir. 2020) (28 U.S.C. §1453(c)(1) appeal of remand order regarding subject-matter jurisdiction); *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1158 (7th Cir. 2021) (28 U.S.C. §1292(b) appeal regarding claim accrual); *Clay v. Union Pacific Railroad Co.*, No. 25-2185 (28 U.S.C. §1292(b) consolidated appeal regarding whether the 2024 amendment to BIPA limiting the number of BIPA violations and claims applies retroactively); *Svoboda v. Amazon.com Inc.*, No. 25-1361 (28 U.S.C. §1292(e) appeal regarding class certification).

Defendant, rather, presents an issue related to a little-used statutory exemption that implicates very few BIPA cases. Nor is there an intra-district split to resolve (*cf. Bryant*, *Thornley*, and *Clay*). Here, the district judges are in accord. The

question presented for appeal by Defendant is not the kind of broadly applicable issue that this Court has found worth reviewing on an interlocutory basis.

Defendant's Petition frames its appeal as pertaining to a single question. But Section 1292(b) refers to certifying orders, not questions. *Edwardsville Nat'l Bank and Trust Co. v. Marion Laboratories, Inc.*, 808 F.2d 648, 650-51 (7th Cir. 1987). And when the Court examines the District Court's Order, it will find that the Order specifically concludes that the resolution of Defendant's 25(e) defense—which Defendant rushed to a pre-discovery ruling via stipulation—"warrants further investigation" and "would be better resolved on a fully developed record at the conclusion of discovery." Dkt. #90 at 7.

Acceptance of Defendant's Petition would accordingly be based on an insufficiently developed record and would not resolve the type of broadly applicable and important issue that the Seventh Circuit has found to be worth abrogating the final judgment rule for. The Parties should be permitted to develop the record below before any appeal is presented.

B.   The *Arenholz* criteria have not been met.

As will be demonstrated below, Defendant's Petition fails to satisfy any of the "four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Arenholz* at 675 (emphasis in original). And all four must be met.

1.  *The first criterion, that the issue must be a question of law, is not met.*

"Section 1292(b) was not intended to make denials of summary judgment routinely appealable[.]" *Arenholz* at 676. It thus "use[s] 'question of law' in much the same way a lay person might, as referring to a 'pure' question of law rather than merely to an issue that might be free from a factual contest." *Id*. at 676-77. "The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case." *Id*. at 677; *see also, e.g., Moomaw v. Geosnapshot Pty Ltd.*, No. 3:23-cv-1321, 2025 U.S. Dist. LEXIS 41010, at *33, 2025 WL 721130, at *11-12 (S.D. Ill. Mar. 6, 2025) (question of law factor not satisfied when the "alleged question of law is inextricably intertwined with an analysis of the factual allegations in th[e] case"). "To summarize [*Arenholz*], [a] 'question of law' means an abstract legal issue." *Munchkin v. Tomy Int'l, Inc.*, No. 18 C 6337, 2023 U.S. Dist. LEXIS 241861, at *9, 2023 WL 11921670 (quoting *Arenholz* at 677).

There is no pure question of law here. Defendant presents the following question for certification: "Whether Section 25(e) of BIPA requires only a temporal nexus—meaning that government contractors are exempt from BIPA during the same time that they maintain active government contracts—or whether it requires some further substantive nexus between government contracts and a contractor's alleged collection of biometric information." Petition at 3. Defendant construes the District Court's holding denying Defendant's motion for summary judgment to be that

"'by including the language 'when working for that State agency or local unit of government' in Section 25(e), 'the Legislature intended to require a nexus between the BIPA violation and the scope of the defendant's work with the government.'" Petition at 40-41 (quoting Summary Judgment Order at 5) (quoting 740 ILCS 14/25(e)).

If this Court agrees with the District Court's construction of Section 25(e)—which is the correct outcome—Defendant will raise an additional issue that it has not yet presented of what such a further substantive nexus consists of, *i.e.*, how much of a nexus is required. The District Court's summary judgment decision states in this regard that "the critical question is as follows: when Union Pacific collected Plaintiffs' fingerprints, did that occur 'within the scope' of Union Pacific's work as a government contractor?" Summary Judgment Order at 6. The Court proceeded to analyze and decide that (a) "[t]he fingerprint collection was not within the scope of the Metra contracts," *id*. at 6; and (b) "[t]he fingerprint collection was [] not within the scope of the CREATE program or the IDOT contracts," *id*. at 7. The Court also "addresse[d] Union Pacific's work as a subcontractor for federal agencies, and the fact that shipments from these agencies passed through the intermodal facilities." *Id*. It found "that resolution of this final issue … would be better resolved on a fully developed record at the conclusion of discovery" and ordered that "[t]he parties may thus reraise this issue at the conclusion of discovery." *Id*.

Defendant's proposed appeal therefore presents a poor vehicle for interlocutory review. Indeed, the District Court's holding "involve[d] mixed questions of law and

fact concerning [Defendant's] conduct" which "serve[s] to demonstrate that [Defendant's] alleged question of law is inextricably intertwined with an analysis of the factual allegations in this case." *Moomaw* at *34. "The determination necessarily requires examination of the facts" for which "[t]he same will be true for [this Court]; determining whether [Defendant's conduct is] sufficient to establish" that Defendant is exempt from BIPA compliance under BIPA's government contractor exemption "will necessarily require [this] Court to dig through the record reviewing facts . . . and declarations." *Id*. And as the District Court recognized, these facts are not currently in the record but could be placed in the record subsequently. Summary Judgment Order at 6-7. Defendant's appeal therefore would be more efficiently and fairly entertained at the conclusion of the case rather than now—piecemeal—on only the pre-discovery summary judgment record that it presents.

"Under these circumstances, [Defendant] cannot meet the standard for a 'question of law' for appellate review under § 1292." *Moomaw* at *35. "Because all four criteria must be satisfied in order to certify an order for immediate appeal under § 1292(b), and at least one is not satisfied, the Court need not address the remaining criteria." *Id*. (citing *Arenholz* at 675).

2. *The second criterion, that the issue must be controlling, is not met.*

"For an issue to be controlling, it must be likely to affect the course of the litigation that save[s] time and expense for the district court." *Lysengen v. Argent Trust Co.*, No. 20-cv-1177, 2024 U.S. Dist. LEXIS 82947, at *8 (citing *Sokogon Game*

*Enter. Corp. v. Tushie-Montgomery Assocs.*, 86 F.3d 656 (7th Cir. 1996)). That also is not the case here for the reasons expressed above and below.

3. *The third criterion, that the issue must be contestable, is not met.*

The movant bears a "heavy burden" to establish that an issue is "contestable" to warrant an interlocutory appeal. *Flynn v. Exelon Corp.*, No. 1:19-cv-8209, 2022 U.S. Dist. LEXIS 15806, at *7, 2022 WL 267915 (N.D. Ill. Jan. 28, 2022); *see Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).

Although the District "Court believe[d] its opinion was rightly decided, the Court recognize[d] that both parties offer reasonable interpretations of the statutory language at issue" and concluded from this that "[t]he appeal is thus contestable." Interlocutory Appeal Order at 3. For authority, the Court quoted *In re Lion Air Flight JT 620 Crash*, 2023 WL 3653217, at *4 (N.D. May 25, 2023), that "[i]t must be a 'difficult central question of law which is not settled by controlling authority,' and there must exist a 'substantial likelihood' that the district court's ruling will be reversed." *Id.*

The District Court never concluded that there was a substantial likelihood of reversal of its opinion—that it believed was rightly decided. Further, "an issue is not contestable merely because reasonable judicial minds could differ, nor is an issue contestable when the court is unguided by binding precedent." *Emley v. Wal-Mart Stores, Inc.*, No. 1:17-cv-02350, 2020 U.S. Dist. LEXIS 3723, at *13-14, 2020 WL 108374 (S.D. Ind. Jan. 8, 2020). Thus, "certification of an appeal is not available merely because reasonable minds might differ as to issues of statutory construction."

*Id.* at \*19. Nor does "novelty alone warrant[] a departure from the preferred course of litigation culminating in an appeal." *Id.* at \*20. Additionally, "[t]he mere presence of a disputed issue that is a question of first impression for the Seventh Circuit, by itself, is insufficient to demonstrate a substantial ground for difference of opinion." *Richard v. Eli Lilly & Co.*, No. 1:23-cv-00242, 2024 U.S. Dist. LEXIS 85773, at \*10, 2024 WL 2126103 (S.D. Ind. May 10, 2024).

"Rather, it is the duty of the district court to analyze the strength of the arguments in opposition to the challenged ruling, which process includes examining whether other courts have adopted conflicting positions regarding the issue of law proposed for certification." *Id.* (internal quotation marks omitted). "Ultimately, a district court's order is contestable if there are substantial conflicting decisions regarding the claimed controlling issue of law, or the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal." *Emley* at \*20. (internal quotation marks omitted) (quoting and citing numerous N.D. Ill. authorities).

Defendant has not presented a sufficient contest to warrant its proposed interlocutory appeal. As the District Court recognized in its Summary Judgment Order, it followed the great weight of authority in reaching its decision, including the decision of an Illinois Appellate Court, that "a reasonable reading of § 25(e) that does not render the second half superfluous is [that] by including the language 'when working for that State agency or local unit of government,' the Legislature intended to require a nexus between the BIPA violation and the scope of the defendant's work

with the government." Summary Judgment Order at 5 (citing *Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U, ¶6 (Ill. App. Ct. (1st) Sept. 27, 2022) (unpublished), appeal denied, 201 N.E. 3d 582 (Ill. 2023); *Rojo v. Homer Tree Care, Inc.*, No. 23 L 8588 (Ill. Cir. Ct., Law Div. May 29, 2024) (unpublished transcript), Dkt. #75-2; *Navarette v. Josam Acquisitions*, No. 2019 CH 14368 (Ill. Cir. Ct. Mar. 29, 2021) (unpublished transcript), Dkt. #75-3)).

Only a single decision made by a Chancery Court judge—given from the bench without supportive reasoning—*Miranda v. Pexco, LLC*, No. 2021 CH 02127 (Ill. Cir. Ct., Chancery Div., Aug. 23, 2023) (unpublished transcript), Dkt. #68 at Ex. 8-B, has adopted Defendant's position. A conclusory decision made from the bench lacks deliberation and sufficient persuasive force to constitute a substantial conflicting decision.

Indeed, even the existence of conflicting written deliberative opinions by judges of the District Court do not necessarily satisfy the "contestability" prong. *See Rogers v. BNSF Railway Co.*, No. 19-cv-03083, 2022 U.S. Dist. LEXIS 109394, at *3-4, 2022 WL 2208824, at *2 (N.D. Ill. Jun. 21, 2022) (denying railroad BIPA defendant's motion for interlocutory appeal: "If a disagreement between two district judges sufficed, the floodgates would be opened to virtually unlimited interlocutory appeals given the number of sitting district judges. And this would be so even were the argument confined to a disagreement between two judges within a district, particularly when one considers that the Northern District of Illinois has twenty-one active and eleven senior district judges."); *Flynn v. Exelon Corp.*, No. 19 C 8209, 2022

U.S. Dist. LEXIS 15806, at *7, 2022 WL 267915, at *3 (N.D. Ill. Jan. 28, 2022) ("The likelihood of reversal is greater where there are a substantial number of decisions conflicting with the district court's order regarding the controlling question of law.") (emphasis added)). *Cf. Shah v. Zimmer Biomet Holdings, Inc.*, No. 3:16-CV-815-PPS-MGG, 2019 U.S. Dist. LEXIS 27245, at *26-27, 2019 WL 762510, at *8 (N.D. Ind. Feb. 20, 2019) ("A few conflicting district court opinions and a forty-year-old out-of-circuit decision on very different facts does not satisfy Section 1292(b)'s contestability requirement.").

The lead point of the District Court's Summary Judgment Order was that "[i]f the Illinois Legislature wished to categorically exempt all defendants who were government contractors, the Legislature would have only needed to include the first half of the sentence: 'Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agency of a local unit of government" within § 25(e). Summary Judgment Order at 5. "Such language would categorically exempt any government contractor, regardless of whether the BIPA violation was within the scope of the defendant's work with the government [so to] read the entirety of § 25(e) as a categorical exemption thus renders the second half of § 25(e) superfluous." *Id*. The District Court's correct point is that "[i]n turn, a reasonable reading of § 25(e) that does not render the second half superfluous is as follows: by including the language 'when working for that State agency or local unit of government,' the Legislature intended to require a nexus between the BIPA violation and the scope of the defendant's work with the government." *Id*.; *see also* Summary Judgment Order at 3

("Illinois law recognizes interpretive canons against surplusage and absurdity [and courts] must construe the statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous.") (quoting *In re Hernandez*, 918 F.3d 563, 569 (7th Cir. 2019) (citations omitted))[1]; *see also Bonaguro v. County Officers Electoral Bd.*, 158 Ill. 2d 391, 397 (1994) (under Illinois law "[s]tatutes should be construed, if possible, so that no term is rendered superfluous or meaningless.").

Defendant's only retort here is that "[t]he phrase 'when working for that State agency or local unit of government' requires that the defendant have an active or current government contract at the time of the alleged BIPA violation." Petition at 12 (quoting 740 ILCS 14/25(e)). The argument does not withstand the slightest scrutiny because the statutory provision's opening phrase—"a contractor, subcontractor, or agent of a State agency or local unit of government"—is written in the present tense and thus already limits the exemption to a current "contractor, subcontractor, or agent" of a government agency. If the exemption that "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government *when working for that State agency or local unit of government*," 740 ILCS 14/25(e) (emphasis added), means when currently performing *any* work for a State agency or local unit suffices no matter how unrelated such work is to the collection, use and distribution of the biometric identifier or information at issue, then

---

[1] "In Illinois, the 'primary rule of statutory construction is to ascertain and give effect to the intent of the legislature, and the best evidence of legislative intent is the statutory language." *Id.* (quoting *In re Hernandez, supra*).

the phrase "when working for that State agency or local unit of government does *no* work. To be "a contractor, subcontractor, or agent of a State agency or local unit of government" under the exemption a private entity currently be performing *some* work for a State agency or local unit of government or the private entity categorically is not a contractor, subcontractor, or agent of a State agency or local unit of government. Under Defendant's construction, as the District Court rightly concluded, the phrase "when working for that State agency or local unit of government" would be rendered mere surplusage.

Additionally, Defendant's construction is contrary to legislative intent. The legislative findings and purpose of BIPA includes, *inter alia*, that BIPA was enacted because "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g); *see McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, ¶24; *Rosenbach* at ¶33. BIPA "eminently rational[ly]" exempts state and local government agencies, which "are generally entitled to sovereign immunity," from its coverage. *Bryant* at 601; *see* 740 ILCS 14/10 ("A private entity does not include a State or local government agency."). And "[t]he legislature could have excluded government agencies and contractors working for government agencies for any number of legitimate reasons" such as extending their sovereign immunity to the government contractors and subcontractors for such work. *Id*. "The legislative record also revealed that the General Assembly planned to assess threats to privacy caused by government's possession of personal information in a

different way—namely, by forming a study committee …." *Id.* Further, because "government agencies have no profit motive to exploit individuals' biometric information, so the perceived dangers associated with the possession of sensitive information are less severe vis-à-vis government agencies and contractors subject to their supervision." *Id.* Such eminently rational reasons extend to the work that government contractors and subcontractors are performing under their contracts with state and local agencies, but not to work that is outside of their scope.

The District Court accordingly recognized "that a categorical exemption would lead to absurd results in which a large company with a single government contract would be exempt from BPA even when the company's violations were entirely unrelated to the contract." *Id.* at 6. It found that "[i]ndeed, the facts of this case highlight the absurdity." *Id.* The Court observed that "[f]or example, from May 2017 to October 2017, Union Pacific entered into a contract with the Illinois Department of Transportation to improve a railroad crossing in Steeleville, … a small town in southern Illinois, over three hundred miles away from the intermodal facilities in Chicago." *Id.* "The fact that Union Pacific improved a single railroad crossing in Steeleville is entirely unrelated to the collection of truck drivers' fingerprints at its intermodal facilities" and "[t]o read § 25(e) as categorically exempting Union Pacific from BIPA for those six months of 2017 would be an absurd result." *Id.*

Defendant argues that the District Court erred in determining legislative intent in part based on absurdity grounds, citing *Cothron*'s admonition that "the Illinois Supreme Court 'has repeatedly held'—including under BIPA—that where

statutory language is clear, it must be given event, 'even though the consequences may be harsh, unjust, absurd, or unwise.'" Petition at 12-13 (quoting *Cothron*, 2023 IL 128004, ¶40). But the Illinois Supreme Court has also repeatedly held that when construing the language of a statute for whether it is clear, courts are obligated to construe them when possible to avoid absurd or unjust results. *See People v. Clark*, 2024 IL 130364, ¶26 ("The legislature could not have intended this absurd approach ...."); *Hubble v. Bi-State Dev. Agency of the Illinois-Missouri Metro. Dist.*, 238 Ill. 2d 262, 283 (2010) ("By overlooking significant aspects of interstate compacts, the appellate court's construction of the Compact was so narrow that it could possibly render an absurd result. '[A] court construing the language of a statute will assume that the legislature did not intend to produce an absurd or unjust result' (*State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 541, 605 N.E.2d 539, 178 Ill. Dec. 745 (1992)), and will avoid a construction leading to an absurd result, if possible (*City of East St. Louis v. Union Electric Co.*, 37 Ill. 2d 537, 542, 229 N.E.2d 522 (1967))."

The latter is what the District Court appropriately did here. The flaw in Defendant's argument is that *Cothron* followed the settled rule that "where statutory language is clear, it must be given effect, 'even though the consequences may be harsh, unjust, absurd or unwise.'" Here, unlike in *Cothron*, the statutory language does not plainly support Defendant's interpretation. Therefore, as the well-settled cases above dictate, the interpretation that avoids absurdity is the correct one.

Defendant has consequently failed to carry its heavy burden to show there are substantial conflicting decisions under which there is a substantial likelihood that the District Court's Summary Judgment Order will be reversed on appeal.

4. *The fourth criterion, that the issue must promise to speed up the litigation, is not met.*

The Seventh Circuit has recognized that District Courts presented with motions for interlocutory appeal should be "reluctant to exercise their discretion to grant such requests, as they all too frequently cause unnecessary delays in lower court proceedings and waste the resources of an already overburdened judicial system." *Herdrich v. Pegram*, 154 F.3d 362, 368 (7th Cir. 1998), rev'd on other grounds, 530 U.S. 211 (2000). "For an interlocutory appeal to materially advance the litigation, it must move the case forward, speed up, or lead to the ultimate termination of the litigation." *Lysengen* at *8 (citing *Arenholz* at 676). "What is required . . . is that an immediate appeal will expedite rather than protract the resolution of the case." *Consumer Fin. Prot. Bur. v. TransUnion*, 674 F. Supp. 3d 467, 471 (N.D. Ill. May 23, 2023) (citing, *inter alia, Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012)).

Defendant's proposed interlocutory appeal of the District Court's denial of its pre-discovery summary judgment motion would accomplish none of these things. For starters, Defendant's construction of the District Court's Summary Judgment Order is incomplete. Again, its holding includes that on the record presented the fingerprint collection was not within the scope of the Metra or IDOT contracts or the CREATE program. And it further includes that the issue of whether Defendant's work as a

subcontractor for federal agencies, and the fact that shipments from these agencies passed through the intermodal facilities, would be better resolved on a full record post-discovery.

Defendant's stipulation of fact that "[w]hen Plaintiffs' fingers were scanned at Union Pacific's intermodal facilities, Plaintiffs were not performing work pursuant to state or local government contracts cited in Union Pacific's Motion for Summary Judgment" was expressly limited by Defendant "[f]or purposes of the Motion for Summary Judgment only[.]" Dkt. # 71 at ¶4. So, what will likely happen is that post-appeal Defendant will return to the District Court, complete discovery, and attempt to re-litigate all the issues on a post-discovery summary judgment record.

IV.    CONCLUSION

Defendant Union Pacific Railroad Company has not come close to meeting its heavy burden to show that exceptional circumstances justify the departure from the basic policy of postponing appellate review until after the entry of final judgment. Wherefore, the Court should deny Defendant's Petition to Appeal Pursuant to 28 U.S.C. §1292(b).

Dated: November 24, 2025

Respectfully submitted,

Ernest Payton, Tommy Hill, Marcus
Wright, David Uti, Jorge Santoyo,
Maurice Madkins, Llewellyn Lenard,
Tony Johhson, JC Johnson II, Periss
Crawford, Sunair Ramchandani, and
Jerome Buckner,

**Plaintiffs-Respondents**

By:     */s/ David M. Bizar*
David M. Bizar
Andres Pereira
DJC Law, PLLC
1012 W Anderson Ln
Austin, TX 78757
(512) 220-1800
dbizar@teamjustice.com
apereira@teamjustice.com

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c)(1) because it contains 5,159 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This response complies with the typeface requirements and type-style requirements of Federal Rule of Appellate Procedure 32(a), as amended by the Seventh Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

Dated: November 24, 2025

*/s/ David M. Bizar*
David M. Bizar

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2025, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ David M. Bizar*
David M. Bizar
